UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANCE BEATRICE PHILIPS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:12-cv-01772 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 19) AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CONSTANCE PHILIPS AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

    Constance Beatrice Philips ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff seeks judicial review of the decision of the administrative law judge ("ALJ") who concluded she was not disabled. For the reasons set forth below, Defendant's motion for summary judgment is **DENIED** and the action is **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**

    Plaintiff filed applications for disability insurance benefits and supplemental security income, which were denied by the Social Security Administration initially and upon reconsideration. (Doc. 13-3 at 31). After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on February 10, 2012. *Id.* The ALJ determined Plaintiff was not disabled under the Social Security Act,

and issued an order denying benefits on February 23, 2012. *Id.* at 49-58. The Appeals Council denied Plaintiff's request for review of the decision on September 10, 2012. *Id.* at 2-4. Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful

2

employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.     Relevant Medical Evidence**

Dr. Leo Fong performed an arch aortography to take images of Plaintiff's heart on October 14, 2009, which confirmed a blockage in her artery. (Doc. 13-8 at 20). In November 2009, Dr. Bipin Joshi noted Plaintiff reported a shortness of breath, "swelling of her ankles and chronic back pain." *Id.* at 10. In addition, Dr. Fong noted Plaintiff complained of "exertional pain in her right arm, as well as chronic numbness and tingling in her fingertips." *Id.* at 12. Dr. Fong performed a right carotid to subclavian bypass, and diagnosed Plaintiff with right arm claudication. *Id.* After the surgery, Plaintiff reported she was "not having the same degree of fatigue," and Dr. Fong released Plaintiff "to full activity" on November 23, 2009. *Id.* at 43.

In February 2010, Plaintiff reported she had intermittent pain and paresthesia in her right forearm and wrist. (Doc. 13-8 at 67). Although Plaintiff's neurological test was within normal limits, she demonstrated "midline paraspinal tenderness" in her lumbar spine. *Id.*

In March 2010, Plaintiff complained of intermittent neck pain and continuing bilateral pain in her hands and wrists. (Doc. 13-8 at 52). Dr. Halim Fadil noted Plaintiff had surgery for carpal tunnel syndrome on her right arm in the 1980s and on the left arm in 2007. *Id.* Upon examination, Dr. Fadil found Plaintiff's "pinprick sensation [was] intact ..., except on the left 4th finger, and strength [was] intact except for mild weakness of the fingers flexors bilaterally." *Id.* Dr. Fadil performed neurologic electrodignostic testing, which had "abnormal" results "consistent with mild to moderate carpal tunnel

syndrome affecting mainly the sensory fibers on the left." *Id.*

Dr. Vie reviewed x-rays of Plaintiff's spine taken on March 26, 2010. (Doc. 13-8 at 65). Dr. Vie opined Plaintiff had "mild multilevel degenerative disc disease…with disc space narrowing from L3 through S1." *Id.* Also, Dr. Vie found "evidence of facet arthrosis in the lower lumbar region." *Id.*

Dr. Rustom Damania performed a consultative physical examination on July 1, 2010. (Doc. 13-8 at 72-77). Dr. Damania noted Plaintiff had "right neck and arm pain, goiter, congenital heart disease, hypertension, obesity, umbilical hernia, chronic low back pain and history of carpal tunnel." *Id.* at 72. Dr. Damania determined Plaintiff had "no tenderness to palpation in the midline or paraspinal areas," no muscle spasm, and equal muscle town through her back. *Id.* at 75. According to Dr. Damania, Plaintiff's hand grip was normal, but she had a "[s]light sensory impairment [in] the left third finger." *Id.* He found Plaintiff had a normal range of motion in her back, shoulders, elbows, wrists, hips, and knees. *Id.* at 75-76. Based upon the examination, Dr. Damania opined Plaintiff "should be able to lift and carry 20 pounds occasionally and 10 pounds frequently," "can stand and walk without restriction," and "can sit without restriction." *Id.* at 77. Further, Dr. Damania found Plaintiff did not have postural, manipulative or communicative limitations. *Id.*

Dr. Sadda Reddy reviewed the record and completed a physical residual functional capacity assessment on August 31, 2010. (Doc. 13-8 at 78-83). Dr. Reddy opined Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit about 6 hours in an 8-hour day, and stand and/or walk about 6 hours in an 8-hour day. *Id.* at 79. Dr. Seddy explained: "considering prior carotid subclavian bypass and intermittent low back pain due to multiple level degenerative disc disease, the [recommendation] of a light RFC is appropriate." *Id.* at 80. However, Dr. Seddy believed Plaintiff should have "no frequent overhead reaching with [her] right upper extremity due to history of right carotid to subclavian bypass." *Id.* Further, Dr. Seddy opined Plaintiff was limited to occasionally climbing ladders, ropes or scaffolds; and frequently climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling. *Id.* at 81.

In September 2010, Plaintiff reported she had pain in her right jaw to Dr. Lim. (Doc. 13-9 at 10). Plaintiff explained she had "pain on and off for several months on the right side and the doctor [she] saw at Smile Clinic said that [she] needed to have a root canal or extract it." *Id.* However, she

4

still had pain "every so often" after having the tooth extracted. *Id.* In addition, Plaintiff had symptoms of hypothyroidism including cold intolerance, weight gain, fatigue, depression, and hair loss. *Id.* at 9. She reported that she was able to "walk a block to 1 ½ block before getting tired." *Id.* Her complaints of cold intolerance, weight gain, and lethargy continued into October 2010. *Id.* at 4.

Plaintiff visited an emergency room on November 4, 2010, complaining of "throbbing" and "sharp" pain in her right ear and the right side of her jaw, which she reported having off and on for eleven months. (Doc. 13-10 at 37). Plaintiff reported the pain caused feelings of nausea, and an ENT found nothing wrong. *Id.* The physician's assistant and emergency room physician recommended Plaintiff see a specialist. *Id.* at 38.

Dr. Mary Lewis performed a comprehensive psychiatric examination on November 14, 2010. (Doc. 13-9 at 28-22). Plaintiff reported she suffered from depression, which would "last[] a couple of hours but not more than two days." *Id.* at 28. Dr. Lewis observed Plaintiff's "[s]tream of mental activity was within normal limits," and her "[st]ream of consciousness was linear, logical, coherent, and goal oriented." *Id.* at 30. According to Dr. Lewis, Plaintiff's "capacity to act purposefully, to think rationally, and to deal effectively with her environment [was] not significantly impaired. *Id.* Dr. Lewis tested Plaintiff's attention and concentration, and determined they were "satisfactory based upon [her] ability to successfully count by 2s to 20 and back to zero" and "complete[] a three-step command." *Id.* at 31-32. Dr. Lewis gave Plaintiff a GAF score of 70[1], and opined Plaintiff "does not appear to be suffering from a major mood disorder." *Id.* at 32. Consequently, Dr. Lewis concluded Plaintiff's ability to understand and remember either very short and simple or detailed instructions was "not significantly impaired." *Id.* at 33. Likewise, she determined Plaintiff's abilities to maintain concentration and attention, sustain an ordinary routine without special supervision, complete a normal workday and workweek, and interact with others were "not significantly impaired." *Id.*

Dr. Garcia completed a residual functional capacity assessment on November 29, 2010. (Doc.

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score from 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

5

13-9 at 34-62). According to Dr. Garcia, Plaintiff suffered from an affective disorder. *Id.* at 34. He observed Plaintiff had no restriction in activities of daily living; mild difficulties in maintaining social functioning; and mild difficulty in maintaining concentration, persistence, or pace. *Id.* at 42. In addition, Dr. Garcia found insufficient evidence to determine whether Plaintiff had suffered repeated episodes of decompensation. *Id.* Dr. Garcial concluded Plaintiff's mental impairments were "non severe." *Id.* at 46. This assessment was affirmed by Dr. George Spellman on December 8, 2010. *Id.*

On February 4, 2011, Plaintiff was seen by an endocrinologist for the first time, and reported having a pain level of "10/10." (Doc. 13-10 at 32). She visited an emergency room again on February 22, 2011, reporting sharp, intermittent pain in the right side of her jaw and ear that had lasted "for several days." *Id.* at 27. She received a prescription for Vicodin. *Id.*

On July 25, 2011, a magnetic resonance image (MRI) was taken on Plaintiff's jaw. (Doc. 13-10 at 24). Dr. Phillip Tran opined the exam was "suboptimal… due to significant motion artifacts." *Id.* However, he found "evidence of bilateral and mandibular condyle translation with the mouth in the open position with the right [side] perhaps slightly more than the left." *Id.* Plaintiff continued to report pain on the right side of her head throughout the fall of 2011. *Id.* at 483-84, 478-80.

Dr. Gail Osijo diagnosed Plaintiff with Trigeminal Neuralgia on December 21, 2011, and scheduled an appointment for Plaintiff to be seen by a neurologist in March 2012. (Doc. 13-10 at 70). Dr. Osijo informed Plaintiff that Trigeminal Neuralgia is a problem with the trigeminal nerve that "causes sudden, sharp, burning, or shock-like pain attacks in the area linked to the problem nerve branch." *Id.* The information provided to Plaintiff explained that [Trigeminal Neuralgia] pain attacks are normally brought on by triggers including eating, talking, shaving, brushing your teeth, wind, and noise." *Id.* In addition, Plaintiff was informed that her pain attacks "may occur from weeks to months to years, and often get worse over time." *Id.*

Dr. Emestina Saxton, a neurologist, examined Plaintiff on March 7, 2007 after the ALJ issued the decision finding Plaintiff was not disabled. (Doc. 13-10 at 76). Plaintiff explained the pain began after she had a right carotid endarterectomy in November 2009, which felt "like 'labor pain.'" *Id.* Plaintiff told Dr. Saxton that her pain lasted "up to two hours and occur[ed] many times a day and is present for two to three weeks, with pain free-intervals from one week to two months." *Id.* Upon

6

examining Plaintiff's neck, Dr. Saxton observed Plaintiff had a mildly decreased range of motion with spasms. *Id.* at 78. According to Dr. Saxton, "[Plaintiff's] facial pain is descriptive of a trigeminal autonomic cephalalgic (TAC) most closely related to cluster headache." *Id.* Dr. Saxton prescribed Topamax for Plaintiff's pain. *Id.* At a follow-up appointment with Dr. Saxton in July 2012, Plaintiff reported that Topamax had helped with her pain and she had "[o]nly occasional jabs of pain about once a week or less." (Doc. 13-10 at 78). She said she was "doing well except for the pain in the base of the fingers of the left hand," and reported having occasional dizziness. *Id.*

### B. Administrative Hearing

Plaintiff testified at the hearing before the ALJ on February 10, 2012. (Doc. 13-3 at 66). She reported she had a high school education and completed one year of medical vocational training. *Id.* at 70-71. Plaintiff reported she worked several jobs between 1999 and 2004, including letter sorter for the Post Office, receptionist, and gift shop attendant at a casino. (*Id.* at 73-79).

Plaintiff estimated she was able to lift and carry five pounds without hurting herself. (Doc. 13-3 at 70). In addition, Plaintiff believed she was able to stand for ten minutes before she needed to rest, sit for thirty minutes before she needed to move around, and up to walk one block. *Id.* at 70-71. She reported it was necessary for her to lie down or elevate her feet for approximately four hours during the day due to pain or fatigue. *Id.* at 71. Plaintiff said she had difficulty with gripping and grasping, and was only able to hold an item for ten minutes before her hands would "sting." *Id.* at 72. Further, Plaintiff said she had difficulty with concentration due to the pain, and believed the longest she could concentrate was one hour. *Id.* at 71-72.

She testified she was able to take care of her personal hygiene, and cooked once a week. (Doc. 13-3 at 85). Also, Plaintiff reported she prepared simple meals such as a bowl of cereal or making a sandwich twice a day. *Id.* at 85. She stated she did the dishes and took out the trash "once every three days," swept and mopped once a week, did laundry "[o]nce every two weeks," dusted once a month, and ironed clothes every day. *Id.* at 86-88.

Plaintiff reported she talked on the phone each day for about ten minutes, but never sent text messages and did not have a computer. (Doc. 13-3 at 89). She testified that she watched television, read, and walked to pass the time. *Id.* Plaintiff stated she walked about once a week for half an hour.

*Id.* In addition, she reported her walk to and from the mailbox took ten minutes each day. *Id.* at 91. Plaintiff estimated she was about 90-95 percent compliant with her physicians' recommendation for exercise, and 80 percent compliant with her diet. *Id.* at 91-93.

She testified that she never obtained a driver's license, and last drove twenty years ago. (Doc. 13-3 at 84-85). Plaintiff said she rode the bus every day, but also got rides from others when she needed. *Id.* at 85.

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of March 17, 2010. (Doc. 13-3 at 52). At step two, the ALJ found Plaintiff's severe impairments included: "status-post right carotid subclavian bypass with stent; arch aortography with subsequent right common carotid angiography and left subclavian angiography; C2-3 degenerative disc disease; and obesity." *Id.* However, Plaintiff's "lumbar degenerative disc disease/low back pain, neck goiter/multilevel thyroid, history of carpal tunnel syndrome…, history of hypertension, and a history of hyperlipidemia" were "non-severe" impairments. *Id.* Further, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing, including 1.04, 1.08, 4.00, 4.12, 9.00, and 12.04. *Id.* at 53.

After considering "the entire record," the ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6 hours in an 8-hour workday." (Doc. 14-3 at 53). In addition the ALJ found: "The claimant is limited to occasionally climbing ladders, ropes and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl, and frequently climb ladders, ropes, or scaffolds. The claimant should avoid frequent overhead reaching with her right upper extremity, which is her dominate upper extremity."[2] *Id.* Based upon Plaintiff's residual functional capacity, the ALJ determined Plaintiff could perform "past relevant work as a receptionist, postal clerk and cashier." *Id.* at 57. Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 58.

**DISCUSSION AND ANALYSIS**

---

[2] Notably, it is unclear whether the ALJ believes Plaintiff to be limited to occasional or frequent climbing of ladders, ropes, and scaffolds.

**A.     The ALJ's decision at Step Two**

Plaintiff contends the ALJ erred at step two of the sequential evaluation by ignoring her neurological disorder. (Doc. 16 at 16-18). The inquiry at Step Two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). A claimant must make a "threshold showing" (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*

The Ninth Circuit has determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe." Rather, for an impairment to be "severe," it must significantly limit the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b). Specifically, basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations, and [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, for purposes of Step Two, Plaintiff met her burden of providing objective medical evidence consisting of signs and symptoms of Trigeminal Neuralgia. Although not diagnosed until December 2011, the medical record demonstrates Plaintiff complained repeatedly of pain on the right side of her neck, and even sought emergency medical treatment for the pain. (*See, e.g.,* Doc. 13-8 at 53, 72-77; Doc. 13-9 at 10, 37-38; Doc. 13-10 at 32, 37.) For example, in November 2010 Plaintiff visited an emergency room complaining of "throbbing" and "sharp" pain in her right ear and the right side of her jaw, which she reported having on and off for eleven months, but recently caused her to feel nauseated. (Doc. 13-10 at 37). She again visited an emergency room on February 22, 2011, reporting

sharp, intermittent pain in the right side of her jaw and ear that had lasted "for several days." *Id.* at 27. The ALJ failed to acknowledge—let alone discuss—Plaintiff's diagnosis of Trigeminal Neuralgia, or her symptoms of pain at Step Two of the evaluation.

When the ALJ fails to list a medically determinable impairment at Step Two, but considers the limitations posed by the impairment in the RFC, an error at Step Two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In this case, however, the ALJ failed to discuss Plaintiff's Trigeminal Neuralgia and erroneously discredited her allegations of pain at Step Four, as discussed below. Even if the evidence does not establish the diagnosed impairment establishes more than "slight abnormality," the ALJ erred by failing to identify and evaluate the conditions and its symptoms in combination at Step Two, or consider any limitations at Step Four. 20 C.F.R §§416.927, 416.945; 416.929. Thus, the error was not harmless. *See Lewis*, 498 F.3d at 911.

**B.    Credibility Determination**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 57). However, the ALJ found Plaintiff was "not entirely credible" and her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible . . ." *Id.* at 56-57. Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Importantly, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484,

10

1488 n.4 (9th Cir. 1986).  The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working.  Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence.  *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony").

Factors that may be considered as part of a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Here, the ALJ considered a number of factors, including Plaintiff's daily activities, her work history, inconsistent statements, and the medical record.  (Doc. 14-3 at 56-57).  Plaintiff asserts these reasons were legally insufficient to support a rejection of her testimony regarding her symptoms.  (Doc. 16 at 21).

*1.     Plaintiff's daily activities*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barchart,* 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…").  Likewise, an ALJ may conclude

"the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a plaintiff's allegations of disability. *Orn*, 495 F.3d at 639.

In this case, the ALJ considered Plaintiff's activities, observing:

> She said she is able to take care of her personal care, is able to feed herself, and prepare simple meals twice a day. The claimant testified she does dishes and empties the trash every three days, makes her bed each morning, changes the sheets every two weeks, and does the laundry every 2 weeks. She stated that she folds the laundry, irons daily, sweeps each week, mops each week, wipes the counters down each week, cleans the bathroom every 2 months, and dusts monthly. She also said her son and daughter help with the vacuuming. The claimant testified she has a checking account which she manages, she talks on the phone once a day, reads each day for about 45 minutes, and watches television for 2-3 hours each day.

(Doc. 13-3 at 56). Significantly, the majority of the activities identified by the ALJ were not performed by Plaintiff on a daily basis. Regardless, the Ninth Circuit has made clear that the mere fact a claimant engages in normal daily activities "does not any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court continued, "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting Fair, 885 F.2d at 603). In this case, the ALJ failed to find Plaintiff's limited activities could be transferred to a work setting, or state Plaintiff spent a "substantial" part of her day engaged in such activities. Consequently, Plaintiff's activities of daily living did not constitute clear and convincing evidence to discount her credibility. *See Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

  2.  *Work history*

As Defendant argues, the Ninth Circuit has determined that a claimant's poor work history is a relevant factor in a credibility determination. (Doc. 19 at 13) (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In *Thomas*, the ALJ found the claimant "has shown little propensity to work in her lifetime" given her "extremely poor work history." *Id.*, 278 F.3d at 959. The Court observed the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before

she claimed disability in June of 1993." *Id.*  Accordingly, the Court found her poor history was a "specific, clear and convincing reason[]" for discounting her pain testimony. *Id.*

Here, the ALJ observed Plaintiff "ha[d] a poor work history, with only five full substantial gainful activity years in the past relevant 15 years, and only three more full substantial gainful activity years in her entire life." (Doc. 13-3 at 56). In addition, the ALJ noted "[Plaintiff] testified she began working part-time in February 2012, for 18 hours each week, answering phones. She said she works four days a week, but had to leave early each work day because of pain." *Id.* The ALJ found her part-time work as a receptionist was "not consistent with allegations of total disability." *Id.* at 57. Thus, the ALJ appears to discredit Plaintiff both because she did not have a strong history of full-time work, and because she obtained a part-time job.

As an initial matter, the ALJ fails to explain how Plaintiff's testimony that she was able to work a part-time job "but had to leave early each work day because of pain" is inconsistent with her allegation that pain precludes her from full-time work. Moreover, as Plaintiff asserts, the ALJ did not inquire "as to why she had not worked more consistently." (Doc. 16 at 21.) Indeed, the ALJ questioned Plaintiff regarding her work history, but did not inquire why she left her jobs or worked only part time. *See, e.g., Burton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (as part of the credibility assessment, the ALJ considered the claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *Drouin v. Sullivan,* 966 F.2d 1255, 1259 (9th Cir. 1992) (finding the ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain"). Although the Court has no criticism of the ALJ considering her poor work history, the ALJ fails to explain why Plaintiff's part-time work and her work history necessarily demonstrate a lack of candor as to whether Plaintiff suffers from medical conditions that render her unable to work full-time. The ALJ needed to explain this finding in light of his conclusion that "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 57). The failure to do so requires the Court to find that Plaintiff's work history is not a clear and convincing reason for discounting her credibility.

///

**3.    Inconsistent statements and treatment compliance**

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case, the ALJ observed Plaintiff "initially testified she is 'fully' treatment complant … [but] later admitted she is only 90 to 95% compliant with her exercise regime" and "only 80% compliant" on her diet regime. (Doc. 13-3 at 56). In addition, the ALJ noted Plaintiff had "several failed appointments." *Id.* (citing Doc. 13-8 at 63, 68). Notably, of the appointments that the ALJ identifies, only one occurred after her alleged onset of disability. (*See* Doc. 13-8 at 56). Nevertheless, when a claimant makes inconsistent statements regarding compliance with treatment, the inconsistency is a proper factor in a credibility determination. *See Thomas*, 278 F.3d at 958-59; *Fair*, 885 F.2d at 603. Thus, this may support the ALJ's adverse credibility determination.

**4.  Objective Medical evidence**

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Although the ALJ summarizes portions of the objective medical evidence, he fails to identify "what testimony is

14

not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring an ALJ to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints").  Thus, the ALJ's review of the objective medical evidence does not support his decision to reject Plaintiff's subjective complaints and pain too great to sustain full-time work.

   5.  *Reliance on invalid reasons*

  When an ALJ sets forth reasons for an adverse credibility finding that are not supported by the record or are legally insufficient, the Court must consider whether the reliance on invalid reasons was a harmless error. *See Batson v. Comm'r of the Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (applying a harmless error standard where the credibility finding was invalid). The Ninth Circuit explained, "So long as there remains 'substantial evidence supporting the ALJ's conclusion's on credibility' and the error 'does not negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless." *Carmickle*, 533 F.3d at 1162 (quoting Batson, 359 F.3d at 1197).

  The reasons set forth above were neither "clear and convincing," nor supported by substantial evidence in the record.  Though the ALJ determined Plaintiff made inconsistent statements regarding her compliance with treatment, estimating she was 90-95 % compliant with her exercise is not completely at odds with a statement that she is compliant with the recommended exercise routine. Likewise, reliance upon the fact that Plaintiff was only 80% compliant with her diet restrictions rather than "fully" compliant—even with coupled with the statements related to the exercise compliance—is not a clear and convincing reason to find Plaintiff lacks credibility regarding the severity of her subjective complaints.

  The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  Thus, the credibility determination cannot be upheld because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record.

**C.     Remand is appropriate in this action**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony can credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834; *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Significantly, the ALJ failed not only to properly evaluate Plaintiff's credibility, but erred also at Step Two. Thus, remand is appropriate in this matter.

**CONCLUSION AND ORDER**

The ALJ erred at Step Two by failing to discuss Plaintiff's diagnosis of Trigeminal Neuralgia and her symptoms of right neck and jaw pain at Step Two of the evaluation, or to consider any

limitations this impairment causes at Step Four. *See* 20 C.F.R §§416.927, 416.945; 416.929. In addition, the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective complaints. As a result, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on these matters, it declines to address the remaining issues raised by Plaintiff in her opening brief.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's motion for summary judgment (Doc. 19) is **DENIED**;
2. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Constance Phillips and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **February 24, 2014**            **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE